INVESTORS, INC., Appellant,

v.

Charles HADLEY and Gayle Hadley, Appellees.

No. 3-86-021-CV.

Court of Appeals of Texas, Austin.

Sept. 23, 1987.

Rehearing Denied Nov. 4, 1987.

David G. Slater, Austin, for appellant.

Bruce E. Anderson, Austin, for appellees.

Before SHANNON, C.J., and BRADY and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Appellees Charles Hadley and Gayle Hadley sued Investors, Inc. in the district court of Williamson County claiming Investors violated the Deceptive Trade Practices Act, Tex.Bus. & Comm.Code Ann. § 17.-46(b) (Supp.1987). Upon trial to a jury, the district court rendered judgment for the Hadleys. This Court will reverse the judgment in part and affirm the judgment in part.

The Hadleys pleaded that Investors made certain misrepresentations to them in the process of providing a loan commitment. Pursuant to the claimed misrepresentations, the Hadleys believed that Investors would provide permanent financing for the purchase of their house even though the house was not completely constructed. Investors, however, refused to provide permanent financing for the partially completed house. The Hadleys asserted that, as a result, they were forced to draw upon their cash reserves and to obtain permanent financing on less favorable terms than those supposedly offered by Investors.

The jury answered that in connection with the loan transaction Investors had committed several acts in violation of the Deceptive Trade Practices Act, that such acts were producing causes of actual damage to the Hadleys, and that such acts were committed knowingly. Based upon the answers of the jury, the district court rendered judgment awarding the Hadleys $42,000 in actual and "additional" damages and $29,922.81 in attorney's fees.

By point of error one, Investors claims that the district court erred in submitting special issue ten "without an instruction regarding the proper measure of damages." In response, the Hadleys suggest that Investors failed to preserve the claimed error for review by tendering a substantially correct instruction.

Special issue ten reads:

What sum of money, if any, if paid now in cash, do you find would fairly and reasonably compensate the Plaintiffs for the actual damages they have incurred? In answering this issue, you are instructed not to consider damages, if any, for mental anguish, if any.

Investors does not complain that the accompanying instruction was erroneous but complains instead that the district court failed to submit its tendered additional explanatory instruction giving the measure of damages.

Texas R.Civ.P. 279 Ann. provides in this connection:

Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of the judgment unless a *substantially correct* definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment. (Emphasis supplied).

Investors' tendered instruction provided:

"Actual damages" constitutes the difference between the contractual rate of interest and the rate of interest the Plaintiffs were required to pay to obtain money from another source, and may also include other special damages, reasonably within the contemplation of the parties.

In a deceptive trade practices cause of action, the prevailing plaintiff is entitled to recover, *inter alia*, "the amount of *actual damages* found by the trier of fact." Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Supp. 1987). Actual damages are "those recoverable at common law." *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.1980). The Deceptive Trade Practices Act "does not extend the scope of actual damages beyond these common law rules." *Building Concepts, Inc. v. Duncan*, 667 S.W.2d 897 (Tex.App.1984, writ ref'd n.r.e.); *Great State Petroleum v. Arrow Rig Service*, 706 S.W.2d 803 (Tex.App. 1986, no writ). Accordingly, although the defendant's acts may literally be a "producing cause" of damage to the plaintiff, the plaintiff may only be compensated for what he shows to be *"actual damages"*—damages recoverable at common law. *See* § 17.50(a).

As reflected in Investors' requested instruction, at common law, the basic measure of damages for breach of an agreement to lend is the difference between the contractual rate of interest and the rate of interest appellant obtained from another loan source. *Davis v. Small Business Investment Co.*, 535 S.W.2d 740 (Tex.Civ. App.1976, writ ref'd n.r.e.); *Collin County Savings & Loan v. Miller Lumber Co.*, 653 S.W.2d 114 (Tex.App.1983, no writ). Both parties, however, agree that the Hadleys suffered no damage in this respect since the subsequent loan acquired by them carried a lower interest rate. Instead, the Hadleys sought only *consequential damages*—*additional* expenses and costs incurred by them *as a result of* Investors' failure to provide the loan. Accordingly, it is that part of Investors' requested instruction, directed to special damages, which must be examined.

In a breach of loan agreement case, consequential damages are recoverable when "reasonably within the contemplation of the parties *at the time the agreement was made.*" *Davis, supra* (Emphasis supplied); *see Mead v. The Johnson Group, Inc.*, 615 S.W.2d 685 (Tex.1981) (stating this as general rule for recovery of consequential damages). The critical "time frame" element of consequential damages was omitted from Investors' proposed instruction. As Investors' instruction would allow the jury to consider occurrences subsequent to the agreement to provide the loan in determining whether the Hadleys' damages were foreseeable to Investors, the tendered instruction was not substantially correct. The point of error is overruled.

By points of error seven through nine, Investors attacks, by "no evidence" and "insufficient evidence" points, the district court's submission of special issues one, four, and seven. Each of these issues related to whether Investors had committed a deceptive trade practice. Special issue one inquired whether Investors "caused confusion or misunderstanding as to the source and/or approval of the loan." Special issue four inquired whether Investors "represented that the loan had approval, benefits, or quantities which it did not have." Special issue seven asked whether Investors had engaged in "any unconscionable action or course of action...." Because the jury's answer to special issue four is supported by sufficient evidence, we need not address points seven and nine.

 In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950). In reviewing factual sufficiency points of error, the reviewing court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ By its affirmative answer to special issue four the jury concluded, *inter alia*, that "Defendant represented that the loan had ... benefits" which it did not have. In support of the jury's answer, the Hadleys' evidence tended to show that Investors' representative, Doug Freer, had falsely represented that Investors would provide a loan before the house was completely finished.

Gayle Hadley testified that Freer had said "we could close [the loan] at the rough-in stage" and that "he would give us a mortgage to the rough-in stage." Gayle Hadley further testified that Freer's representation came in response to the Hadleys' submission of a loan application accompanied by documents showing the house completed to a "rough-in" stage.

Q: And he told you in some words that you could get a mortgage on what you were doing?

A: He said he would give us a mortgage on what we were doing, yes.

Charles Hadley also testified that they had submitted "a package" to Freer representing an unfinished house and that Freer had said that Investors would provide a mortgage on that basis. Hadley further explained that Freer "knew exactly what stage we were going to," and that he had told Freer that the Hadleys would "close the house and then complete it." This proof constitutes some evidence that Freer represented that the loan had a benefit it did not have.

In its sufficiency of the evidence challenge, Investors relies principally on the fact that among the documents in the "package" submitted to Investors was a "Cost Breakdown" reflecting costs necessary to transform the home from its rough-in stage to a complete and finished house. Based on this document, Investors insists that the package submitted to Freer, "taken as a whole, detailed a finished house," and in approving the Hadley project for a loan, Freer was approving a loan for a *completed* house. Charles Hadley, however, testified that he did not, and could not have, prepared the cost estimates shown in the "cost breakdown," although he stated

the figures were in his hand. Hadley further testified that the "Cost Breakdown" did not form the basis for any part of the loan transaction. From this evidence, the jury could have concluded that the "package" submitted, for which Freer approved a loan, was for an unfinished house. The sufficiency of the evidence point is overruled.

■ Under point of error ten, Investors complains that there was no evidence, or alternatively, that there was insufficient evidence, in support of the jury's answer that the Hadleys had suffered $20,000 in actual damages. Investors first attacks the Hadleys' proof concerning the additional costs in principal and interest incurred by the Hadleys when they ultimately obtained a new loan for a greater sum of money than they had sought from Investors. Charles Hadley testified that the difference in monthly payments between the abortive loan and the one ultimately obtained would cost him $40,320 over the life of the mortgage. Investors argues that this expense is not recoverable as a matter of law and, accordingly, that Hadley's testimony is no evidence of damages.

Investors bases its argument upon its premise that *only* money represented by the difference in mortgage interest rates is recoverable as damages, and that the Hadleys' new loan had a *lower* interest rate. As Investors concedes in its brief, however, the Hadleys' damages also could include special damages reasonably within the contemplation of the parties at the time of the agreement. Investors, in fact, does not challenge this basis for the damage award. Furthermore, Hadley testified that he was forced to borrow more money than originally planned because his cash savings were depleted in his attempt to finish the house after Investors belatedly made completion a prerequisite to financing. There was proof that the parties understood at the time of the original agreement that the Hadleys would need their cash savings to close on the uncompleted house. It was, then, within the contemplation of the parties that Investors' refusal to carry through with the loan until the house was

completed could lead to the depletion of the Hadleys' cash reserve and the subsequent *necessity* of *borrowing* additional monies to take the place of the cash. Because the Hadleys had to borrow this money, they incurred an obligation to pay interest which would not have arisen if they had been able to use their cash. At least to the extent of the extra interest payment, there was evidence that the Hadleys suffered recoverable consequential damages. Although the Hadleys' *calculation* of damages may have overstated the *amount* recoverable, Investors does not attack the judgment on that basis.

Charles Hadley also testified that, between the time of Investors' refusal to provide the permanent financing and the closing of the new loan, they were required to pay $17,175.49 in additional interim interest to the construction lender. Investors contends that this is no evidence of damages "because it wholly fails to account for the use and benefit of the house for the period of this interim financing during which appellees lived in the house." Investors' contention is without merit. The Hadleys were entitled to receive the use of the house in return for payment on the permanent mortgage *alone*. It is plain that the payment of additional interest on the interim loan was a recoverable consequential damage. The point of error is overruled.

■ By point of error four, Investors claims that the district court erred in submitting special issues relating to punitive damages under the Deceptive Trade Practices Act. Investors argues that the Hadleys failed to prove that they had given the statutorily required notice of claim prior to filing suit. § 17.50A(a). Such notice is a "prerequisite to filing a suit seeking damages," argues Investors, and, therefore, absent this proof, punitive damages [1] could not be recovered.

Texas Bus. & Com.Code Ann. § 17.-50A(a) (Supp.1987) provides:

As a prerequisite to filing a suit seeking damages ... against any person, a consumer shall give written notice to the person at least 30 days before filing the suit advising the person of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

A party's failure to adequately plead and prove notice was held to be reversible error under a previous version of the Deceptive Trade Practices Act. *Hollingsworth Roofing Co. v. Morrison*, 668 S.W.2d 872 (Tex. App.1984, no writ); *Blumenthal v. Ameritex Computer Corporation*, 646 S.W.2d 283 (Tex.App.1983, no writ). In this appeal, however, Investors contends that the Hadleys failed to *prove* notice. The Hadleys did *plead* notice in their second amended petition, and under the Rules of Civil Procedure concerning the pleading of conditions precedent, the Hadleys had no obligation to prove notice.

Texas R.Civ.P.Ann. 54 (1979) states:

In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. *When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.*

(Emphasis supplied).

The Hadleys did not "generally aver" performance of all conditions precedent to recovery. Instead, the Hadleys specifically pleaded notice, the *particular statutory* prerequisite to recovery. Although we have found no opinion dealing with the Deceptive Trade Practices Act notice pleading, there are many opinions in support of the premise that other statutorily required notice provisions are subject to Rule 54. *Skinny's Inc. v. Hicks Bros. Construction*

---

1. Investors' limitation of this point to punitive damages apparently is based on its reliance on opinions decided under an earlier version of the Deceptive Trade Practices Act, which stated that

notice was a prerequisite to treble damages. Now, notice is a prerequisite to *any* damage action. § 17.50A(a); Bragg, et al., *Texas Consumer Litigation* at 9 (1983).

*Co.,* 602 S.W.2d 85 (Tex.Civ.App.1980, no writ) (when plaintiff pleaded that he had mailed lien affidavit, this was sufficient pleading of notice; when defendant did not specifically deny, plaintiff need not prove notice); *Continental Contractors, Inc. v. Thorup,* 578 S.W.2d 864 (Tex.Civ.App.1979, no writ) (statutory notice was condition precedent to action against bond required in public works project, pleading notice subject to R. 54); *Yeager Electric & Plumbing Co. v. Ingleside Cove Lumber and Builders, Inc.,* 526 S.W.2d 738 (Tex. Civ.App.1975, no writ) (pleading of statutorily required notice in mechanic's and materialmen's lien case gave plaintiff benefit of R. 54). Pleading of notice has also been held subject to R. 54 when notice of claim was required by contract. *See State Farm County Mutual Insurance Co. of Texas v. Landers,* 520 S.W.2d 604 (Tex.Civ.App. 1975, no writ). We know of no reason why the notice required by § 17.50A should not also be subject to Rule 54, since it is clearly a "condition precedent" to recovery. Because Investors did not specifically deny notice, the Hadleys were not required to prove it. The point is overruled.

Investors claims by point of error three that the district court erred in overruling its motion for summary judgment. It is settled that when a party moves unsuccessfully for summary judgment and subsequently does not prevail at a conventional trial on the merits, the order overruling the motion for summary judgment is not reviewable. *Ackerman v. Vordenbaum,* 403 S.W.2d 362, 365 (Tex.1966); *Motor 9, Inc. v. World Tire Corp.,* 651 S.W.2d 296 (Tex. App.1983, writ ref'd n.r.e.). The point of error is overruled.

■ By point of error two, Investors claims that the district court erred in allowing the Hadleys to supplement their interrogatory answers within thirty days of trial to include counsel as an expert witness on attorney's fees.

Texas R.Civ.P.Ann. 166b 5(b) (Supp.1987) provides in pertinent part:

If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented ... *as soon as practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.* (Emphasis supplied).

Texas R.Civ.P.Ann. 215(5) (Supp.1987) provides in part:

A party who fails to supplement seasonably his response to a request for discovery in accordance with paragraph 5 of Rule 166b shall not be entitled to ... offer the testimony of an expert witness ... when the information required by Rule 166b concerning the witness has not been disclosed, *unless the trial court finds that good cause sufficient to require admission exists.* (Emphasis supplied).

Investors served its first set of interrogatories on the Hadleys on December 9, 1985. Those answers were required to be filed within thirty days or by January 8, 1986. The Hadleys served their answers on January 8. This date was within thirty days of trial, which began on February 4, 1986.

In their original response to interrogatory number one, the Hadleys stated that they intended to call no experts to testify at trial. On January 28, 1985, seven days before trial, the Hadleys, however, moved to supplement their responses so as to include counsel Bruce Anderson as an expert on attorney's fees.

By Rules 166b and 215(5), a party may not supplement discovery to provide the identity of an additional expert witness within thirty days of trial. The Hadleys argue, however, that since their *initial* answers were not due to be filed within thirty days of trial, they could not supplement prior to the exclusionary period. The Hadleys argue, as a result, that their duty to supplement was governed by the general rule that the party supplement "as soon as practical." Rule 166b 5(b). Even assuming this is the correct standard, the Hadleys still had the burden of demonstrating good cause.

Rule 215(5) requires "good cause" to be shown whenever a party "fails to supplement *seasonably* his response to a request for discovery *in accordance with* paragraph 5 of Rule 166b...." (Emphasis supplied). To "seasonably supplement" under Rule 166b(5), the Hadleys were required to supplement "as soon as practical," which they failed to do. At the time the Hadleys initially answered the interrogatories, they were aware of counsel's role as an expert witness. Furthermore, their counsel was aware of Investors' inquiry as to expert witnesses since he personally signed the answers stating that none were to be called. Despite this knowledge, the Hadleys failed to move for supplementation until January 28, nineteen days after their initial answer and only seven days before trial.

The trial court's determination that good cause was shown is governed by the abuse of discretion standard. *Morrow v. H.E.B. Inc.*, 714 S.W.2d 297 (Tex.1986). We are told, however, that "good cause" denotes a strict standard in this context, requiring the proponent to "convince the trial court that the justice of the case requires or compels admission." Kilgarlin and Jackson, *Sanctions for Discovery Abuse Under New Rule 215*, 15 St. Mary's L.J. 767, 819 (1984).

This Court is of opinion that the Hadleys failed to demonstrate "good cause." The Hadleys' counsel, in his affidavit accompanying the motion to supplement, relied in part on efforts to show that Investors would not be prejudiced or surprised by the late supplementation. Counsel averred that he had previously discussed his appearance as an expert and that he would make himself and his records available for discovery. Under *Morrow, supra,* however, proof showing lack of surprise and prejudice to the opponent of the evidence is irrelevant to showing good cause. *E.F. Hutton and Co., Inc. v. Youngblood*, 30 Tex.Sup.Ct.J. 508 (June 24, 1987).

Putting to one side the averments showing Investors' lack of surprise, the balance of the affidavit simply asserts that counsel was weighed down by a busy trial schedule and that his office staff failed to follow his instruction to include his name as an expert. Counsel's excuse is not convincing when counsel personally signed the interrogatory answers representing that no experts would be called. Point of error two is sustained.

We have discussed Investors' important points of error. There are other points, all of which we have considered, and as none are meritorious, all are overruled.

That part of the judgment awarding attorney's fees is reversed and judgment is here rendered that the Hadleys recover no attorney's fees. *E.F. Hutton and Co., Inc. v. Youngblood, supra.* In all other respects, the judgment is affirmed.