**LACHALET INTERNATIONAL, INC., John T. Klim, Daphne Klim and Central Air, Inc., Appellants,**

v.

**George and Olga NOWIK, Appellees.**

**No. 05–88–01202–CV.**

Court of Appeals of Texas, Dallas.

Feb. 26, 1990.

Rehearing Denied March 16, 1990.

Gilbert J. Thomas, Jeffery S. Lynch, Dallas, for appellants.

Richard M. Hunt, Dallas, for appellees.

Before McCLUNG, LAGARDE and OVARD, JJ.

## OPINION

McCLUNG, Justice.

LaChalet International, John T. and Daphne Klim and Central Air., Inc. (hereaf-

ter collectively referred to as appellants) appeal from a judgment entered in favor of George and Olga Nowik. In five points of error, appellants contend the trial court erred in finding that: the Nowiks were entitled to recover under the Deceptive Trade Practices Act (DTPA); the DTPA violations were committed knowingly; the Nowiks were entitled to exemplary damages for common law fraud. They also complain that the trial court erred in awarding rescission and actual damages simultaneously and that there was no evidence to support the judgment against Central Air, Inc. For the reasons stated herein, we affirm the judgment below in part and reverse and render in part.

This suit stems from a real estate transaction. John and Daphne Klim owned and controlled LaChalet International, a Texas Corporation. In 1983, LaChalet bought a ski lodge located in Colorado. As part of the purchase price, LaChalet executed a promissory note secured by a deed of trust for $300,000. Available parking was on land adjacent to but outside of the physical boundaries of the lodge property. When initially acquiring the lodge, LaChalet obtained a written agreement to lease the adjacent parking area and an option of first refusal to purchase the lot from its owners. LaChalet at Powderhorn, Inc. (Powderhorn), a Colorado Corporation, maintained and operated the lodge.

The lodge operated at a deficit and in 1985 John Klim was seeking partners to invest in it. Among those contacted was George Nowik and negotiations between them continued for six months. Klim represented to Nowik that the arrangement with the owners provided that the parking lot was for the exclusive use of the employees and guests of the lodge. Further, that LaChalet had an option of first refusal to purchase the parking lot. Because the lodge was on a mountain, Nowik was concerned about arrangements for guest parking, snow removal, water and sewer services. On December 29, 1985, John and Daphne Klim, LaChalet, Powderhorn and the Nowiks made an agreement to set up a joint venture to own and operate the lodge.

Nowik says he understood the agreement to be essentially as follows: Nowik would pay off the existing note on the property; the lodge would be deeded to the Nowiks; LaChalet would assign the parking lot option jointly to the Nowiks and the joint venture; LaChalet would lease back the lodge from the Nowiks for a rental amount equal to the accruing interest under a promissory note that Nowik agreed to execute; and the lodge would be operated as a partnership with the parties each paying one-half of the costs to manage and operate the lodge. In keeping with the agreement, Nowik paid $185,000 to retire the then existing note and deed of trust against the lodge. Nowik also executed a promissory note payable to LaChalet in the amount of $500,000. Shortly thereafter, Nowik and Klim began having numerous disagreements about the terms of the agreement.

Nowik lived and worked in Dallas. During the summer of 1986, a lodge employee called Nowik to inform him that there was heavy equipment, including trucks and trailers, on the parking lot. The employee also believed the new owners of the parking lot planned to construct a skating rink on it. Nowik instructed Klim to remedy the problem. When Nowik returned to the lodge in October, the parking lot and stairs leading to the lodge were inaccessible due to the heavy equipment still located there. Also, the water to the lodge was off. Klim again promised to inquire about it.

There was evidence that unbeknownst to Nowik, Klim was attempting to negotiate for the option in his own behalf. Additionally, Jake Black, the former operator/manager of the lodge, executed a release of the parking lot option in July 1986 rendering the option that was promised to Nowik worthless. On November 14, 1986, Klim made a demand for money from Nowik and took the position that the partnership operation of the lodge was over. The lodge has not operated since that time, however, Nowik has continued to incur expenses for its maintenance and operation. The owners of the parking lot did construct a skating rink on the adjacent lot.

The Nowiks sued LaChalet, the Klims, and Central Air, Inc. for rescission and/or damages based upon allegations of fraud, deceptive trade practices, failure of consideration and breach of contract. Nowik claims Klim made misrepresentations and failed to disclose material facts concerning the lodge and its operations. LaChalet counter-sued for enforcement of the promissory note and deed of trust signed by the Nowiks. Trial was to the court, and judgment was in favor of the Nowiks.

■ Appellants first multifariously argue that the award of rescission and actual damages simultaneously is error. They also claim that there was no evidence to prove any actual or special damages. We conclude that actual damages may be awarded in addition to rescission if the award is necessary to provide complete relief. *See Whirlpool Corp. v. Texical, Inc.*, 649 S.W.2d 55, 57 (Tex.App.—Corpus Christi 1982, no writ).

An analogous situation was presented in *Whirlpool Corporation v. Texical, Inc.*, 649 S.W.2d at 56–57. There, Texical had purchased defective refrigerators from Whirlpool and refused to pay part of the purchase price. When Whirlpool sued, Texical counterclaimed and was awarded partial rescission and damages. The court of appeals sustained the award noting that the rescission and damage recoveries were not inconsistent. "[W]e have two different theories and two events that are relied upon: 1) failure of consideration in connection with the inability of the refrigerators to function as expected; and 2) the DTPA violation concerning Whirlpool's representations about the appliances." *Id.* at 57. The same result was reached in *Nottingham v. General American Communications Corp.*, 811 F.2d 873, 879 (5th Cir. 1987). In that case investors sued both for damages as a result of deceptive trade practices and to rescind notes executed as part of the investment and on which they had been sued. The court sustained the award of damages and also ordered rescission of the notes. *Id.* at 879–80.

■ This case presents a complex transaction with several parts. We hold a simple rescission would not fully restore the Nowiks to their original position. Rescission of those parts of the investment agreement involving title to the lodge was adequate for those portions of the transaction relating to the transfer of title—the cash payment and the execution of the note. However, the Nowiks were also entitled to compensation for breach of the operating partnership agreement which caused them to incur losses in maintaining the property and keeping it free of tax liens. Since the judgment restored the lodge to the appellants (subject to payment of the amounts awarded the Nowiks), the appellants will receive the benefit of these payments for maintenance and taxes. We, therefore, determine that it was appropriate for the court to award what amounted to partial rescission and actual damages in order to compensate the Nowiks for all their losses.

The case of *Smith v. Kinslow*, 598 S.W.2d 910, 915 (Tex.Civ.App.—Dallas 1980, no writ), which is relied upon by appellants, does not require a different result. In *Smith*, the relief granted in the form of restoration of consideration was complete so that additional damages constituted a double recovery. *Id.* Here, merely restoring the $185,000 paid by the Nowiks would leave them uncompensated for the additional losses caused by the breach of the operating partnership. Because the actual damages suffered by the Nowiks were in addition to the money paid for the lodge, there was no double recovery.

We turn now to the claim that there was no evidence to support the award of actual damages. We must reject all the evidence contrary to the trial court's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 613 (1950). "The law requires only that the evidence [of damages] be sufficient to enable the jury to estimate the loss or damage with reasonable certainty. Damages will not be disallowed merely because the amount thereof can be stated only approximately." *Grandview Farm Center, Inc. v. First State Bank*, 596

S.W.2d 190, 193 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.).

■ According to George Nowik, he sustained losses of $50,000 to $60,000 or more because of misrepresentations concerning the parking lot option. Also, Nowik alleged that had the appellants performed their obligations those losses would have been offset by no more than $18,000 for a net loss of as much as $42,000. Further, he paid half of certain pre–1986 vendor's bills that he should not have had to pay for a total of $1,768.22. He also paid pre–1986 real property taxes totalling $24,602.32. Finally, he paid his lawyer, Jerry Faktor, to work on the transaction. Mr. Faktor's fees were $15,000. Thus, we conclude that there was ample evidence to sustain the actual damage award of $45,000. We overrule point of error one.

Next, appellants contend the Nowiks were not entitled to recover under the DTPA. They proceed from the position that there was no evidence that proper notice was provided as required by section 17.505 of the DTPA or that any deceptive acts or practices were a producing cause of actual damages. They further attack the court's finding that they "engaged in an unconscionable ... course of action ... which resulted in gross disparity between the value received and the consideration paid" as being without support in the evidence.

■ In their First Amended Petition, the Nowiks alleged that all of the requirements of the DTPA had been complied with and alleged specifically that they had "sent [a] demand letter, a true and correct copy of which is attached hereto as Exhibit D ... to Klim and [LaChalet]. That demand letter was received on the same day." This pleading of the performance of a condition precedent placed the burden on appellants to specifically deny that performance had occurred. Almost identical circumstances were present in *Investors, Inc. v. Hadley*, 738 S.W.2d 737, 741–42 (Tex.App.—Austin 1987, writ denied). After a review of the case law on statutory conditions pleaded

under Rule 54, the court concluded that the failure to deny notice relieved the consumer of the burden to prove it. *Id.* at 742. There was no specific denial by appellants of notice under the DTPA therefore the Nowiks were not required to prove it. *Id.*

Appellants appear to argue that because there was no proof of actual or special damages, the Nowiks also failed to establish their conduct was a producing cause of the damages. We have previously outlined the testimony and evidence regarding the claim for DTPA damages. We conclude this evidence is clearly sufficient to support the award of damages and the finding that appellants' conduct was the producing cause of such damages.

■ We also determine that the trial court's finding of unconscionability was supported by the evidence. The evidence shows these misrepresentations by Klim:[1] that the lodge included certain property (it did not); that the stairway which led to the lodge was within the boundary of the property (it was not, resulting in no real access to the lodge itself); that all property taxes for past years had been paid (in fact, taxes were unpaid and delinquent); that LaChalet would convey their option to purchase the adjacent parking lot and would convey it to the Nowiks; that LaChalet would lease back the lodge from the Nowiks and participate equally in the joint venture; that Klim fraudulently induced Nowik to execute a deed of trust to the property based on a false promise not to record the deed. Moreover, Klim failed to tell the Nowiks that: Klim had a prior outstanding judgment against him for breach of his fiduciary duty to business associates; Klim was indicted and convicted in 1986 of forgery of documents involving government contracts; LaChalet had not paid the $20,000 renewal premium for its insurance. There was also testimony that during the partnership Klim attempted to exercise the parking lot option on his own behalf.

In view of all the above, we conclude the trial court could properly find that because of Klim's unconscionable course of conduct, there was a gross disparity between the

1. We note, with some significance, that John Klim did not testify. Additionally, during closing argument plaintiff's counsel indicated Klim did not even appear at trial.

value the Nowiks received and the consideration the Nowiks paid. We overrule point of error two.

Appellants also contend there was no evidence to support the finding that the DTPA violations were committed knowingly. Appellants' denial of having made a promise was some evidence that it was made with the intent not to perform. *See Myers v. King*, 506 S.W.2d 705, 710 (Tex. Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). Additionally, the evidence does show a course of misrepresentations and material omissions perpetrated by the appellants. When the trial court found that the agreement was as claimed by the Nowiks, it could properly decide that the appellants never intended to keep their promises.

■ There was evidence that appellants knew specific factual representations were false. For example, although John Klim was personally involved in the finances of the lodge over a· period of years, Klim told Nowik that all personal property taxes had been accounted for. This statement was false. The trial court could then infer that John Klim knew the true finances of the lodge and misrepresented them. Similarly, Nowik testified that misrepresentations about the boundaries of the property were made by John Klim. The court could conclude that he knew his own property and its boundaries and that Klim knowingly made these false representations. We overrule point of error three.

■ Appellants also claim there is no evidence to support punitive damages. Although legal malice is a pre-requisite to an award of punitive damages for common law fraud, there was adequate evidence of affirmative malice or ill will in this case. This Court noted in *Accent Builders Co., Inc. v. Southwest Concrete Systems, Inc.*, 679 S.W.2d 106, 111 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), *quoting Gardner v. Kerly*, 613 S.W.2d 795, 796 (Tex.Civ.App.— Houston [14th Dist.] 1981, no writ) that:

it is not necessary to prove affirmative malice or ill will to support an award of exemplary damages. Malice may be implied from a wrongful act which is intentional and done without just cause or excuse. Malice may be inferred from a wrongful act done intentionally in violation of [a party's] rights.

*See also Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 687 S.W.2d 8, 12–13 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

■ The evidence shows that John Klim was negotiating in his own behalf to purchase the parking lot while he was a partner with the Nowiks although the partnership was supposed to own the option on it. We have earlier referenced the evidence relating to Klim's misrepresentations and nondisclosures in his dealings with the Nowiks. This course of conduct was enough for the court to infer legal malice. We overrule point of error four.

Finally, appellants contend there was no evidence to support judgment against Central Air, Inc. We agree. Nowik cites this Court to the evidence which they contend supports the judgment against Central Air, Inc.; a check for $500 from LaChalet at Powderhorn to Central Air, Inc.; a series of wire transfers for monies to LaChalet from Central Air, Inc.; and a letter outlining the parking lot option which was mailed to the Central Air, Inc. address.

■ As a general rule, the veil of the separate identity of the corporation is interposed for the shareholder to avoid personal liability and only under extraordinary circumstances can this veil be pierced, the corporate identity disregarded, and personal liability imposed on shareholders, officers or a parent corporation. *See Tigrett v. Pointer*, 580 S.W.2d 375, 381–82 (Tex. Civ.App.—Dallas 1978, writ ref'd n.r.e.). Generally, courts are reluctant to pierce the corporate veil. *See Angus v. Air Coils, Inc.*, 567 S.W.2d 931, 933 (Tex.Civ.App.— Dallas 1978, no writ).

■ Factors which the courts have considered when piercing the corporate veil have included: (1) unity of ownership, *Tigrett*, 580 S.W.2d at 375 and *Angus*, 567 S.W.2d at 933; (2) the degree to which corporate formalities have been followed and corporate and personal property have been kept separately, *Castleberry v.*

*Branscum,* 721 S.W.2d 270, 272 (Tex.1986); (3) the amount of financial interest, ownership and control the individual maintains over the corporation and whether the corporation has been used for personal purposes, *id.;* (4) whether the two entities file consolidated tax returns and the extent to which the books are separate, *Moffett v. Goodyear Tire & Rubber Co.,* 652 S.W.2d 609, 613 (Tex.App.—Austin 1983, writ ref'd n.r.e.).

 The evidence supporting the court's "implied finding that, as an alter ego of the Klim's, [sic] Central Air, Inc. participated in their misconduct and is liable for it" is mainly documentary evidence that funds were transferred between the corporations. There was no evidence of failure to observe corporate formalities, to hold director or shareholder meetings, to keep separate corporate or financial records, or of commingling of accounts. *See Valdes v. Leisure Resouce Group,* 810 F.2d 1345, 1352–56 (5th Cir.1987). We, therefore, conclude the trial court erred in rendering judgment against Central Air, Inc. We sustain point of error five.

In a single cross-point, Nowik complains that the trial court erred in failing to award additional punitive damages. Complaints of an alleged error must be raised below to afford the trial court an opportunity to correct any errors. *Luna v. Southern Pac. Transp. Co.,* 724 S.W.2d 383, 384 (Tex.1987); *West Texas Utilities Co. v. Irvin,* 161 Tex. 5, 7, 336 S.W.2d 609, 610–11 (Tex.1960). Nowiks' brief fails to indicate where in the record it presented its complaints to the trial court, and we are not obliged to search the record to determine whether this complaint was preserved. *Saldana v. Garcia,* 155 Tex. 242, 248, 285 S.W.2d 197, 201 (1955).

We reverse and render the judgment against Central Air Inc. In all other respects, the judgment is affirmed.