**A.V.I., INC., Appellant,**

v.

**Kenneth and Claudia HEATHINGTON, Appellees.**

**No. 07–91–0042–CV.**

Court of Appeals of Texas, Amarillo.

Aug. 28, 1992.

Rehearing Overruled Oct. 5, 1992.

failure to appear for trial is involuntary due to confinement in a jail or penitentiary).

 

Carr Fouts Hunt Craig Terrill & Wolfe, Donald M. Hunt, Gary M. Bellair, Lubbock, for appellant.

Daniel L. Adcock, Lamesa, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

POFF, Justice.

Appellant, A.V.I., Inc. (AVI), appeals from a judgment finding it had engaged in deceptive acts or practices in its dealings with appellees, Kenneth and Claudia Heathington (the Heathingtons), and ordering it to pay the Heathingtons $31,470.55 in damages, attorney's fees and prejudgment interest. In four points of error, AVI contends the trial court erred by (1) submitting and rendering judgment upon Question 5b because the question submitted an improper measure of damages; (2) admitting the irrelevant testimony of two witnesses; (3) rendering judgment for the Heathingtons despite their failure to conclusively prove they had given AVI a required demand

letter; and (4) awarding prejudgment interest on attorney's fees. In a single cross point of error, the Heathingtons contend the trial court erred in not granting a new trial on the issue of attorney's fees on appeal. We will overrule AVI's four points of error and sustain the Heathingtons' cross point of error.

In 1978, the Heathingtons agreed to lease a water-driven irrigation system from Trans Union Leasing Corporation (Trans Union). However, they did not deal directly with Trans Union. Rather, they dealt with AVI in obtaining the lease. In 1980, the Heathingtons agreed to lease an electric sprinkler irrigation system from Trans Union for a ten-year term. They again dealt directly with AVI. By the terms of the written lease, the Heathingtons had an option at the end of the ten-year term to either purchase the irrigation system for its fair market value or renew the lease for one year at fair rental value. The lease provided that the fair market value of the system would be determined by an independent appraiser approved by both parties.

Subsequently, the Heathingtons became unable to make the required payments on the 1978 lease and Trans Union sued for the back payments. The Heathingtons claim that not until this time did they become aware of their written contractual options regarding retention of the electric irrigation system at the end of the 1980 lease. Up to that point in time, the Heathingtons claim to have relied on the statement of the AVI representative who assisted them in obtaining both leases, Paul Carter, that at the end of the ten-year term the electric irrigation system could be purchased for one dollar. Upon discovering that Carter's alleged representation was false, the Heathingtons, as a third-party plaintiff, sued AVI, as a third-party defendant, asserting violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA). *See* Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987 & Vernon Supp. 1992). One of the Heathingtons' assertions was that by telling them the irrigation systems could be purchased at the end of the lease term for one dollar, AVI represented that an agreement conferred rights it did

not have in violation of Tex.Bus. & Com. Code § 17.46(b)(12) (Vernon 1987). The Heathingtons also asserted that AVI's misrepresentation was intended to induce them into a transaction into which they otherwise would not have entered and therefore constituted a violation of Tex.Bus. & Com. Code § 17.46(b)(23) (Vernon 1987).

While the suit remained pending, Trans Union and the Heathingtons negotiated a settlement agreement which served to resolve the two parties' differences regarding the 1978 lease, as well as the 1980 lease which had not been at issue in the suit. Under the terms of the agreement, the Heathingtons agreed to pay Trans Union a total of $7500—$2500 to settle the 1978 lease and $5000 to settle the 1980 lease. Following this settlement, only the Heathingtons' claims against AVI remained. The Heathingtons then amended their original petition against AVI to assert entitlement to the $7500 paid to settle with Trans Union.

At trial, both Carter and AVI's president denied that any representations had been made concerning purchase of the irrigation systems for one dollar at the end of the lease. The jury, however, found that AVI had violated the DTPA during the course of its dealings with the Heathingtons on both the 1978 lease and the 1980 lease. The jury also found that the statute of limitations defeated the Heathingtons' DTPA claim as to the 1978 lease and the Heathingtons have not appealed from that finding. In regard to AVI's deceptive trade practices in conjunction with the 1980 lease, the jury awarded the Heathingtons $5000 actual damages and $22,979.87 attorney's fees. The trial court then imposed $2000 in statutory damages and $1490.68 for prejudgment interest on actual damages and attorneys fees. It is from this total judgment of $31,470.55 that AVI appeals.

In its first point of error, AVI contends the trial court erred in submitting and rendering judgment upon question 5b because the question submitted an improper measure of damages. The question read as follows:

Question Number 5:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the Heathingtons for their damages, if any, that resulted from such false, misleading, or deceptive acts or practices or unconscionable actions or course of action with respect to the 1978 or 1980 lease?

Consider the following elements of damages, if any, and none other. Consider each element separately. Do not include damages for one element in any other element.

Answer in dollars and cents for damages, if any.

. . . .

b. The amount, if any, the Heathingtons reasonably paid to settle the claims of Trans Union Leasing Corporation on the 1980 lease.

Answer: $5,000.00

AVI objected to the inclusion of Question 5b in the charge on the ground that it submitted an improper measure of damages. Additionally, after the jury had made the $5000 finding, AVI moved that the finding be set aside as immaterial.

■ The DTPA is intended to provide remedies for persons victimized by false, misleading, or deceptive acts or statements. *See Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 938 (Tex.1980). The purpose of the DTPA is to permit the adversely affected party to recover the greatest amount of "actual damages" alleged and established to have been caused by the defendant. *Farrell v. Hunt*, 714 S.W.2d 298, 300 (Tex.1986). Actual damages are those found in common law. *Id.* The amount of actual damages that can be recovered under the DTPA is determined by the total loss caused by the deceptive trade practice. *Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex.1985).

The DTPA allows a plaintiff to recover damages as measured by the "out of pocket" rule or the "benefit of the bargain" rule, whichever gives the consumer the greatest recovery. *Leyendecker & Assoc., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984). The benefit of the bargain rule al-lows the consumer to recover the difference between the value as represented and the actual value received. *Id.* Both AVI and the Heathingtons agree that in this case, the benefit of the bargain should be measured by the difference between one dollar—the amount for which the Heathingtons claim AVI represented the electric irrigation system could be purchased at the end of the lease term—and the fair market value of the irrigation system at the end of the lease term. As mentioned, the terms of the lease contract required the Heathingtons to pay the fair market value of the irrigation system in order to obtain it at the end of the lease term.

■ AVI's basic contention is that the $5000 paid by Heathington to settle the 1980 lease is no evidence of the fair market value of the electric irrigation system at the end of the lease. However, in their written settlement agreement, Trans Union and the Heathingtons agreed that the fair market value of the electric irrigation system was $5000. While the lease states that the fair market value of the system would be determined by an independent appraiser, AVI's Paul Carter testified that appraisers were not commonly used to determine fair market value. Carter stated that "[m]ost people negotiated their deal at the end [of the term] and agreed to pay for it." We find the agreement between Trans Union and the Heathingtons that the fair market value of the irrigation system was $5000 constitutes evidence of the fair market value of the system at the end of the lease term. The trial court did not err in submitting Question 5b. AVI's first point of error is overruled.

■ In its second point of error, AVI contends that the trial court erred in allowing the testimony of two local farmers, Randy Floyd and Dean Faulkenberry, concerning lease agreements they entered into with Paul Carter of AVI. At trial, Carter declared, "I have never told anyone that they could buy it [irrigation systems] at the end of that lease for a dollar on a Trans Union lease." However, both Floyd and Faulkenberry rebutted Carter's statement by testifying that they had leased irriga-

tion systems from Trans Union through AVI and that, as in the case of the Heathingtons, Carter told them the irrigation system could be purchased at the end of the lease term for one dollar. AVI argues that the testimony of Floyd and Faulkenberry should not have been admitted because it was irrelevant. AVI contends that such testimony would only have been relevant if it established that AVI had a habit of making the one dollar misrepresentation. *See* Tex.R.Civ.Evid. 406. We disagree.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R.Civ.Evid. 401. The fact that is of consequence to the determination of the action (*i.e.*, the material fact) in this case is whether Carter, on behalf of AVI, represented to the Heathingtons that they could purchase the irrigation system at the end of the lease term for one dollar. Testimony from others that Carter made a one dollar representation to them is evidence that tends to make the fact that Carter made a one dollar representation to the Heathingtons more probable than it would be without such testimony. Contrary to AVI's assertion, the testimony of Floyd and Faulkenberry is clearly relevant. We do not agree with AVI's assertion that Rule 406 circumscribes the test of relevance as explained in Rule 401.

All relevant evidence is admissible except as otherwise provided by constitution, statute or the rules of evidence. Tex.R.Civ. Evid. 402. AVI fails to cite any rule that would render the questioned testimony inadmissible. AVI's contention that the proper predicate for impeachment was not laid, *see* Tex.R.Civ.Evid. 613(a), is unavailing. The testimony of Floyd and Faulkenberry would have been admissible even if it did not contradict Carter's testimony. AVI's second point of error is overruled.

■ In its third point of error, AVI argues that the trial court erred in rendering *judgment for the Heathingtons* because the Heathingtons failed to prove they had complied with the notice provision of Tex.Bus. & Com.Code Ann. § 17.505(a) (Vernon Supp.1992). In pertinent part, Section 17.-505(a) states:

> As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

We need not reach the merits of AVI's contention, however, because AVI did not specifically deny that the Heathingtons failed to comply with the notice provision. While the burden to plead and prove compliance with the notice provision rests on the party seeking recovery, the party seeking to deny recovery must point out the failure to plead or prove notice or the complaint is waived. *HOW Ins. Co. v. Patriot Fin. Servs.*, 786 S.W.2d 533, 537 (Tex. App.—Austin 1990, writ denied). The party seeking to deny recovery must specifically deny that notice was received. *La-Chalet Int'l, Inc. v. Nowik*, 787 S.W.2d 101, 105 (Tex.App.—Dallas 1990, no writ); *Investors, Inc. v. Hadley*, 738 S.W.2d 737, 742 (Tex.App.—Austin 1987, writ denied). A general denial is not sufficient.

■ Here, AVI's live pleading, its fourth amended answer, failed to specifically deny that the Heathingtons had complied with the notice provision. While previous answers filed by AVI had specifically denied compliance with the notice provision, those answers were of absolutely no effect because an amended pleading supersedes the instrument for which it is substituted. Tex.R.Civ.P. 65; *State v. Seventeen Thousand and No/100 Dollars U.S. Currency*, 809 S.W.2d 637, 639 (Tex.App.—Corpus Christi 1991, no writ); *Ex Parte Thompson*, 803 S.W.2d 876, 877 (Tex.App.—Corpus Christi 1991, no writ). The superseded pleading is no longer recognized as part of the pleading in the record of the cause. Tex.R.Civ.P. 65; *State v. Seventeen Thou-*

*sand and No/100 Dollars U.S. Currency,* 809 S.W.2d at 639; *Ex Parte Thompson,* 803 S.W.2d at 877. Accordingly, AVI's third point of error is overruled.

In its fourth point of error, AVI maintains the trial court erred in rendering judgment for prejudgment interest on attorney's fees because no basis exists in law to permit such an award. The trial court awarded prejudgment interest of $1490.68 (ten percent per annum) on the amount of attorney's fees that had been paid by the Heathingtons at the time of the judgment—$5000 of the $28,009.23 with which they were charged.

 The Supreme Court of Texas has recognized two forms of interest: interest as interest (*eo nominee*) and interest as damages. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 551–52 (Tex.1985). Interest as interest is compensation for the use or detention of money. *Id.* at 552. Interest as damages is compensation allowed by law as additional damages for lost use of the money during the lapse of time between the accrual of the claim and the date of the judgment, *i.e.,* prejudgment interest. *Id.* An award of prejudgment interest may be based on either an enabling statute or under general principles of equity. *Id.; Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480, 485 (Tex.1978).

 We recognize that there is no statute expressly allowing prejudgment interest on attorney's fees. We are also cognizant of the DTPA cases declaring that prejudgment interest is not allowed on an award of attorney's fees. *See Southwestern Bell Tel. Co. v. Vollmer,* 805 S.W.2d 825, 835 (Tex.App.—Corpus Christi 1991, writ denied); *McCann v. Brown,* 725 S.W.2d 822, 826 (Tex.App.—Fort Worth 1987, no writ). However, we do not read either case as prohibiting a trial court from awarding prejudgment interest on the amount of attorney's fees that have been paid at the time of the judgment.

In *Southwestern Bell,* the court noted that there was "no evidence that any of the trial attorney fees had accrued as damages to [the plaintiff] prior to judgment."

*Southwestern Bell Tel. Co. v. Vollmer,* 805 S.W.2d at 835. As support for its decision to uphold the trial court's denial of prejudgment interest on attorney's fees, the court relied upon *Cavnar* for the proposition that a plaintiff is not entitled to recover equitable prejudgment interest on unaccrued damages. *Id.* The decision of the court of appeals may well have been different had there been evidence that attorney fees had been paid by the plaintiff prior to judgment.

In *McCann,* the Corpus Christi Court of Appeals merely declared, "We find no authority for prejudgment interest on the $750.00 attorney's fees...." *McCann v. Brown,* 725 S.W.2d at 826. No mention is made as to whether the plaintiff had paid the $750 in attorney's fees at the time of the judgment. We assume, however, that no payment had been made because on the same page of the opinion in which the court found no authority for prejudgment interest on the $750 attorney's fee award, the court quoted the following language from our Supreme Court in *Cavnar:*

> [A] prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365–day year) on damages *that have accrued by the time of judgment* ... at the prevailing rate that exists on the date judgment is rendered....

*McCann v. Brown,* 725 S.W.2d at 836 (quoting *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d at 554) (emphasis as in *McCann* and *Cavnar*). Had the $750 attorney's fees been paid prior to judgment, the court would have found authority for prejudgment interest on an award of attorney's fees on the very same page of its opinion.

We note also that after providing for the recovery of prejudgment interest on damages that have accrued by the time of judgment, the Supreme Court declared, "[t]o the extent that other cases conflict with this holding, they are overruled." *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d at 554. Thus, we are not in any way bound by the earlier declaration of the Supreme Court in *Hervey v. Passero,* 658 S.W.2d 148, 150 (Tex.1983), that prejudg-

ment interest is not recoverable on an award of attorney's fees.

Allowing prejudgment interest on an award of attorney's fees that have accrued as damages to the plaintiff prior to judgment is consistent with the spirit and the express language of *Cavnar*. As the *Cavnar* court declared:

> The primary objective of awarding damages in civil actions has always been to compensate the injured plaintiff, rather than to punish the defendant. W. Keeton, et. al, *Prosser and Keeton on the Law of Torts* § 2 (5th ed. 1984). A law that denies recovery of prejudgment interest frustrates this goal. If a judgment provides plaintiffs only the amount of damages sustained at the time of the incident, plaintiffs are not fully compensated. They have been denied the opportunity to invest and earn interest on the amount of damages between the time of the occurrence and the time of judgment.

*Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d at 552. In the present case, if the Heathingtons are unable to realize prejudgment interest on the $5000 attorney's fees they had paid at the time of the judgment, they will have been denied the opportunity to have invested or earned interest on that $5000. Such a result would be clearly at odds with *Cavnar*. Accordingly, the trial court's award of prejudgment interest on the $5000 in attorney's fees paid by the Heathingtons by the time of judgment was entirely proper. AVI's fourth point of error is overruled.

▆▆▆▆ In their cross point of error, the Heathingtons contend that the trial court erred in denying their motion for new trial on the issue of attorney's fees on appeal. The Heathingtons claim there was no support for the jury's answers of "$0" in response to questions inquiring as to the reasonable fees for the services of the Heathingtons' attorney for appeals to this court and to the Supreme Court.

Notwithstanding the jury's answer, the judgment of the court stated:

> The court further finds that the jury's answers of zero to the questions numbered 5 e, f, and g concerning reasonable attorney's fees for any appeals of this

case are without support in the evidence and should be disregarded.

However, the court never entered an amount to be awarded for attorney's fees in the event the appeals in question were perfected. This was error.

A trial judge may disregard the jury's answer to special issues if the issues are immaterial, or if the answers have no support in the evidence. *Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex.1967); *Campion v. Hochheim Prairie Farm Mut. Ins. Ass'n*, 644 S.W.2d 795, 796 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Pilot Life Ins. Co. v. Koch*, 617 S.W.2d 786, 787 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.). The amount of attorney's fees to be awarded is a question of fact and must be supported by credible evidence; this amount rests in the sound discretion of the trial court and its finding will not be disturbed, absent an abuse of discretion. *Travelers Ins. Co. v. Brown*, 750 S.W.2d 916, 918–19 (Tex.App.—Amarillo 1988, writ denied). Where an appellate court finds the issue of attorney's fees was not determined in the trial court, that issue may be severed and remanded to the trial court for a determination of reasonable and proper attorney's fees. *Guerra v. Brumlow*, 630 S.W.2d 425, 431 (Tex.App.—San Antonio 1982, no writ).

Obviously, the trial court wished to award some amount for attorney's fees for possible appeals since it disregarded the jury's findings of "$0." Testimony given at trial on the probable amount of these fees ranged from $3000 to $7500. Because a question of fact still exists as to the reasonable amount of attorney's fees on appeal, that part of the judgment pertaining to appellate fees is severed and remanded to the trial court for determination of proper attorney's fees on appeal.

Accordingly, the judgment of the trial court is affirmed in all respects except as to the issue of attorney's fees on appeal. That issue is severed and remanded for determination by the trial court.