S.W. Bell yellow pages 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-180-CV





 SOUTHWESTERN BELL YELLOW PAGES, INC. AND 


SOUTHWESTERN BELL MEDIA, INC.,



 APPELLANTS


vs.





AUSTIN GUARDIAN STEEL SECURITY, INC.,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 471,073, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 




 Appellee, Austin Guardian Steel Security, Inc. ("Austin Guardian"), sued
appellants, Southwestern Bell Yellow Pages, Inc. and Southwestern Bell Media, Inc. ("Bell"), for
misrepresentations regarding a 1988 Yellow Page advertisement. Austin Guardian's claims were
grounded in contract, negligence, the Deceptive Trade Practices Act, and a claimed duty of good
faith and fair dealing. Following a favorable jury verdict, the district court rendered judgment
for Austin Guardian. We will affirm the judgment of the district court.



THE CONTROVERSY 


 For many years Austin Guardian, a small burglar-bar fabrication and installation
company, carried Yellow Page advertising with Bell. These advertisements listed, among other things, Austin Guardian's business telephone number as containing an 835 prefix. In 1987, John
Kalmbach and several partners purchased Austin Guardian and moved the business. The new
location was in the 251 prefix exchange area and Kalmbach was concerned about losing customers
by changing the telephone number. In response, Bell proposed an extra service by which calls
to the old 835 prefix would be automatically routed to the new 251 prefix. Kalmbach accepted
this service with the result that both telephone numbers, when dialed, would ring at the new
location. However, Kalmbach complained about the extra expense involved.

 In 1988, Kalmbach met several times with Curtis Marchant, a Bell representative,
to discuss renewing Austin Guardian's Yellow Page advertising and to discuss which telephone
number would be listed in the December 1988 Austin Yellow Page directory. Finally, on May
18, 1988, Kalmbach signed a renewal contract with Bell for Yellow Page advertising. When the
December 1988 directory was published, it contained the 251 prefix but not the 835 prefix. This
publication forms the crux of the present controversy.

 Austin Guardian sued Bell and contended Bell had misrepresented that Austin
Guardian's business advertisement would contain the 835 prefix. Bell defended on the basis that
the parties had agreed to print the 251 prefix, which was the actual business number. Bell also
filed a counter-claim for breach of contract to collect the advertisement fee that Austin Guardian
refused to pay. In response, Austin Guardian amended its pleading and included a request for
reformation of the contract to avoid the counterclaim.

 At trial, Kalmbach testified that he was presented with an "ad copy" and a "sample
ad" each of which represented that the 835 prefix would be printed in the Yellow Pages. Bell
responded that the 251 prefix appeared on both the "ad copy" and "sample ad" at the time
Kalmbach approved them. Austin Guardian also presented a September 19, 1988, letter from Bell
stating Austin Guardian's advertisement would read the same as it had in 1987. The 1987 Yellow
Page ad had only used the 835 prefix. Austin Guardian next presented evidence which showed
that its sales decreased in 1989. Austin Guardian argued this decrease was due to the printing of
the 251 prefix in place of the 835 prefix. Bell contended an increase in the number of Yellow
Page competitors and other economic factors explained the loss in sales.

 The trial court submitted the case to the jury under: (1) the Deceptive Trade
Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5),(7) &
17.50(a)(3) (1987) ("DTPA") on theories of misrepresentation and unconscionable conduct by
Bell; (2) breach of a claimed duty of good faith and fair dealing by Bell; and (3) a reformation of
contract theory. The jury found in Austin Guardian's favor on the misrepresentation theory, but
did not find that Bell engaged in unconscionable conduct or that Bell owed Austin Guardian a duty
of good faith and fair dealing. Based upon the jury verdict, the district court rendered a monetary
judgment against Bell for the loss of profits, prejudgment interest, court costs, and stipulated
attorney's fees. Additionally, the jury found the contract did not conform to the intentions of the
parties; therefore, the court also reformed the contract to reflect that 835 was the correct prefix.

 Bell now alleges three points of error. First, Bell assigns as error the district
court's granting both reformation relief and DTPA relief. Bell next challenges the legal and
factual sufficiency of the evidence to support the jury findings under the DTPA. Lastly, Bell
contends the trial court erred as a matter of law in granting reformation and, alternatively,
challenges the factual sufficiency of the evidence to support a jury finding for reformation relief.



DISCUSSION AND HOLDING



I.


THE EVIDENCE


 Austin Guardian presented testimony from Kalmbach as well as records Kalmbach
kept to support three alleged misrepresentations. Bell presented testimony from Marchant and
Jerry Burgener. We will review in detail the testimony and evidence adduced at trial in order to
determine whether it is legally and factually sufficient to support the trial court's judgment.



1.   The "Ad Copy"

 Marchant presented a form document, known as an "ad copy," to Kalmbach for his
approval at the time the contract was signed on May 18, 1988. This "ad copy" contained a
reproduction of the proposed display advertisement and also required Kalmbach's signature. At
trial, Austin Guardian produced a microfilmed replica of the original display "ad copy" obtained
from Bell. This replica showed the 835 prefix scratched out and the 251 prefix manually inserted.

 Kalmbach testified that the ad copy, at the time he signed it, contained the 835
prefix. He further stated that he did not make, authorize, or desire any changes. However,
Marchant testified that the "ad copy" contained the 251 prefix when Kalmbach signed it and the
changes were made at Kalmbach's request in order to reduce costs. 



2.   The "Sample Ad"

 Kalmbach testified that he requested a sample of the ad, in addition to the "ad
copy," at the time he approved the contract on May 18, 1988. He testified that Marchant returned
later the same day with a "sample ad" and this ad contained the 835 prefix. Kalmbach stated he
made a photo copy of the ad which he produced at trial. This trial exhibit contained the 835
prefix. 

 In response, Marchant testified: (1) this meeting never took place; (2) if Kalmbach
had requested a sample ad it would have been reflected on the ad copy; (3) Bell did not use the
type of border tape or machine printing present in the copy produced by Kalmbach in 1988; and
(4) the copy of the ad Kalmbach produced at trial was actually used in 1989 and not in 1988. 

 Jerry Burgener, a Bell sales representative and Marchant's supervisor, also testified
that the sample copy Kalmbach presented was a sample ad from 1989 and not 1988. Burgener
testified he and Marchant first delivered the sample ad to Austin Guardian on April 5, 1989. To
controvert this evidence, Austin Guardian presented unimpeached evidence that the sample ad was
found in Marchant's 1988 file and not in his 1989 file.



3.   The September 19th Letter

 Austin Guardian introduced into evidence a letter sent from Bell to Kalmbach on
September 19, 1988. This letter stated that Austin Guardian's advertisement was not finalized. 
Further, the letter stated that unless Austin Guardian contacted Bell the 1988 advertisement would
read the same as it had in 1987. The 1987 advertisement contained the 835 prefix.



II.



APPELLANTS' POINTS OF ERROR



A.   Sufficiency of DTPA Evidence

 Bell's second point of error attacks the legal and factual sufficiency of the jury
finding that Bell committed an unfair or deceptive act or practice by misrepresenting the contents
of the 1988 Yellow Pages advertisement.


 The standards of review for jury findings are well settled. In reviewing a "no
evidence" challenge, we consider only the evidence and reasonable inferences drawn therefrom
which, when viewed in their most favorable light, support the jury's finding. We disregard all
evidence and inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593
(Tex. 1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). Any probative evidence
supporting the finding is sufficient to overrule the point of error. See William Powers, Jr. & Jack
Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 522
(1991); Robert Calvert, "No Evidence" and "Insufficient Evidence Points of Error," 38 Tex. L.
Rev. 361, 364 (1960).

 We will sustain an "insufficient evidence" point of error only if, after reviewing
the entire record, the finding is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. See, e.g., Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951).

 At trial and on appeal, Austin Guardian has taken the position that three separate
misrepresentations existed which could each, individually, support a DTPA action. These
misrepresentations were presented in the form of: (1) the ad copy; (2) the sample ad; and (3) the
September 19th letter.

 Conversely, Bell argues that Austin Guardian's evidence, at most, establishes that
Bell promised to print Austin Guardian's 835 prefix in the display ad and did not perform that
promise. Bell contends the failure to perform simply establishes a breach of contract and cannot
support a DTPA misrepresentation. Bell divides its case authority for this contention into two
propositions.

 First, Bell states that a promise or representation consistent with a contractual
obligation does not constitute a misrepresentation in violation of the DTPA. Bell then cites cases 
in which the alleged representations were consistent with a contractual obligation. See, e.g.,
Helms v. Southwestern Bell Tel. Co., 794 F.2d 188 (5th Cir. 1986) (wrong number printed in
Yellow Page ad contrary to contract was not DTPA violation); Farina v. Southwestern Bell
Media, Inc., 658 F. Supp. 826 (S.D. Tex. 1987) (failure to publish Yellow Page ad as contracted
was not a deceptive act); cf. Gulf States Underwriters of La., Inc. v. Wilson, 753 S.W.2d 422
(Tex. App. 1988, writ denied); Coleman v. Hughes Blanton, Inc., 599 S.W.2d 643 (Tex. Civ.
App. 1980, no writ); Dura-Wood Treating Co. v. Century Forest Indus., Inc., 675 F.2d 745 (5th
Cir. 1982). 

 Bell also states that relief under the DTPA is not available for conduct amounting
to a mere breach of contract. In support, Bell cites cases in which the conduct involved did not
constitute more than a breach of contract and, therefore, would not support a DTPA claim. See
La Sara Grain Co. v. First Nat'l Bank, 673 S.W.2d 558 (Tex. 1984) (bank's breach of contractual
duty to pay only on an authorized signature was not DTPA violation); Ashford Dev., Inc. v.
USLife Real Estate Servs. Corp., 661 S.W.2d 933 (Tex. 1983) (allegation of a mere breach of
contract, without more, is not a false, misleading, or deceptive act). Further, Bell argues that a
recent Texas Supreme Court decision limited any failure to print a Yellow Page advertisement to
actions based upon contract. See Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493 (Tex.
1991). Although DeLanney states that when the "[G]ist of the action is the breach of the contract
. . . , it is, in substance an action on the contract," we do not read DeLanney to limit all Yellow
Page advertisement cases to breach of contract. Id. at 496 (Gonzalez, J., concurring). 

 We regard all of Bell's authority as inapposite. All of these cases stand for the
proposition that when the action is premised upon the formation or breach of a contract, the
consumer cannot create an additional cause of action by pleading a DTPA violation. The instant
case is legally distinguishable from Bell's authority. Here, Austin Guardian offered proof of three
distinct misrepresentations which Bell denied ever having made. The jury resolved this dispute
in favor of Austin Guardian and expressly found that Bell had misrepresented which prefix it
would use in the ad in question. 

 We hold that Bell is not relieved from DTPA liability merely because the findings
of the jury would constitute both a misrepresentation of fact actionable under the DTPA and a
breach of Bell's Yellow Page ad contract. See, e.g., White v. Southwestern Bell Tel. Co., Inc.,
651 S.W.2d 260 (Tex. 1983) (DTPA claim allowed when a number was misprinted, in violation
of the contract); Smith v. Baldwin, 611 S.W.2d 611 (Tex. 1980) (breach of contract remedies and
DTPA remedies are cumulative and not mutually exclusive); Southwestern Bell Tel. Co. v. Nash,
586 S.W.2d 647 (Tex. Civ. App. 1979, no writ) (DTPA damages awarded for failure to provide
directory listings, directory information, and operator intercept services).

 Bell contends that the evidence supporting the jury finding of misrepresentation was
legally and factually insufficient. We have outlined the evidence supporting and controverting
each of the alleged misrepresentations and we hold that some evidence exists to support the jury
finding. Therefore, we hold the evidence is legally sufficient. Further, after weighing the
evidence, we hold it is factually sufficient to support the jury finding that Bell made
misrepresentations because the jury finding is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. We overrule Bell's second point of error.



B.   Sufficiency of Reformation Evidence


 In point of error number three, Bell challenges the factual sufficiency of the jury
finding which allowed the court to grant contract reformation relief. 

 Reformation is equitable relief properly granted when: (1) the parties reached an
agreement; and (2) the written contract does not reflect the true agreement because of mutual
mistake. Thalman v. Martin, 635 S.W.2d 411, 413 (Tex. 1982). The jury was asked if both
parties intended for the 835 prefix to appear in the December 1988 display ad and if so, was it
material to the parties entering into the contract. The jury answered this question "Yes." This
finding establishes the written contract did not reflect the true agreement between the parties and
allowed the trial court, by final judgment, to reform the contract. As outlined above, this finding
was based upon evidence adduced from Kalmbach and further indicated by the "ad copy," "sample
ad," and September 19th letter. We have reviewed the evidence supporting reformation of the
contract and we hold it is factually sufficient. Accordingly, we overrule Bell's third point of
error.



C.   Reformation and DTPA Damages


 Bell's remaining point of error concerns Austin Guardian's request to have the
written contract reformed to state that the Yellow Page ad would be printed with the 835 prefix. 
Austin Guardian's reformation theory was not pleaded as an independent ground of recovery. It
was pleaded solely as a defensive theory to Bell's attempt to collect on its erroneous Yellow Page
ad. Bell now advances the novel theory that because the district court contemporaneously
included reformation of the contract and DTPA damages together in the final judgment that Austin
Guardian has now forfeited its right to recover DTPA damages and is limited to damages based
upon a breach of the reformed contract. We disagree.

 Following a favorable jury verdict, the trial court awarded DTPA damages and
reformation relief. Reformation was awarded solely as a defensive matter to reflect the true
"meeting of the minds" that occurred between the parties. By rendering judgment
contemporaneously on both DTPA damages as well as contract reformation, the trial court
awarded Austin Guardian full recovery under the pleadings. The equitable relief of reformation
was necessary to provide Austin Guardian with full relief. 

 Reformation is an equitable remedy. A trial court can use equity in addition to
DTPA damages to provide complete relief to a party. See, e.g., Alvarado v. Bolton, 749 S.W.2d
47 (Tex. 1988) (reformation of a deed and DTPA damages awarded contemporaneously); Lachalet
Int'l, Inc. v. Nowik, 787 S.W.2d 101 (Tex. App. 1990, no writ) (rescission of a contract as well
as DTPA damages awarded to provide complete relief). Because reformation and DTPA damages
are not mutually exclusive but are complimentary, we hold that the trial court did not err in
awarding both remedies. Therefore, we overrule Bell's first point of error.

 We affirm the judgment of the district court.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Kidd and Davis*; Justice Kidd not participating]

Affirmed

Filed: April 8, 1992 

[Do Not Publish]



















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (1988).