Motion for Rehearing En Banc Denied as
Moot; Opinion of January 11, 2011 Withdrawn; Affirmed and Substitute Opinion
filed February 10, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00733-CV



Nova Casualty
Company, Appellant 

v.

Turner
Construction Company, Appellee 



On Appeal from
the 80th District Court

Harris County, Texas

Trial Court
Cause No. 2006-77786



 

SUBSTITUTE OPINION ON REHEARING

We deny appellant’s motion for rehearing en banc as
moot, withdraw our opinion of January 11, 2011, and issue this substitute
opinion on rehearing.  In this performance bond dispute, Nova Casualty Company
(“Nova”), the surety, challenges the summary judgment granted in favor of
Turner Construction Company (“Turner”), the surety bond obligee.  In three
issues, Nova asserts that the trial court erred by (1) granting summary
judgment because Turner failed to terminate the obligor, Box or Container
Automation, Inc. (“BOCA”), from the underlying contract secured by the
performance bond; (2) granting summary judgment because Turner failed to
provide sufficient notice of BOCA’s default on the underlying contract to
enable Nova to exercise its performance options under the bond; and (3)
awarding attorney’s fees and pre-judgment interest to Turner.  We affirm.

BACKGROUND

The City of Houston (the “City”) hired Turner as the
general contractor to build a new cargo facility at Bush Intercontinental
Airport.  The contract between the City and Turner provided for the assessment
of liquidated damages against Turner if Turner were late in completing the
project.  In January 2004, Turner subcontracted with BOCA to fabricate and install
a baggage handling system for the new facility.  Turner agreed to pay BOCA a
subcontract price of $415,000.  This subcontract was time sensitive in that it
required BOCA to install the baggage handling system during a narrow time window
near the end of the entire project.  In Article III, the subcontract provided:

Should the progress of the Work of the Project be delayed,
disrupted, hindered, obstructed, or interfered with by any fault or neglect or
act or failure to act of the subcontractor . . . so as to cause any additional
cost, expense, liability or damage to Turner . . . the Subcontractor and its
surety shall and does hereby agree to compensate Turner . . . for and indemnify
[it] against all such costs, expenses, damages and liability. 

The subcontract provided in
Article XI that BOCA’s failure to fully perform or satisfy any of its
contractual obligations (among other things) constituted a default entitling
Turner to:

the right, in addition to any other rights and remedies
provided by this Agreement and the other Contract Documents or by law,
after three (3) days written notice to [BOCA] mailed or delivered to the last
known address of the latter, (a) to perform and furnish through itself or
through others any such labor or materials for the Work and to deduct the cost
thereof from any monies due or to become due to [BOCA] under this Agreement,
and/or (b) to terminate the employment of [BOCA] for all or any portion of the
Work, enter upon the premises and take possession, for the purpose of
completing the Work, of all materials, equipment, scaffolds, tools appliances
and other items thereon, all of which [BOCA] hereby transfers, assigns and sets
over to Turner for such purpose, and to employ any person or persons to
complete the Work and provide all the labor, services, materials, equipment and
other items required therefor. . . .  [I]f the unpaid balance of the amount to
be paid under this Agreement shall exceed the cost and expense incurred by
Turner in completing the Work, such excess shall be paid by Turner to [BOCA],
but if such cost and expense shall exceed such unpaid balance, then [BOCA] and
its surety, if any, shall pay the difference to Turner.  

(emphasis added).  The
subcontract additionally required BOCA to obtain and furnish a performance bond
in favor of Turner.

BOCA obtained a performance bond from Nova in the
amount of the subcontract price.  The performance bond Nova issued to BOCA was
a standard performance bond known in the surety industry as an A-311 bond.  The
bond provided the following remedies available to Turner against Nova in the
event that BOCA defaulted on the subcontract:

NOW, Therefore, the Condition of this Obligation is such
that, if [BOCA] shall promptly and faithfully perform said subcontract, then
this obligation shall be null and void; otherwise it shall remain in full force
and effect.

Whenever [BOCA] shall be, and be declared by [Turner] to be
in default under the subcontract, [Turner] having performed its obligations
thereunder:

(1)  [Nova] may promptly remedy
the default subject to the provisions of paragraph 3 herein, or:

(2)  [Turner] after reasonable
notice to [Nova] may, or [Nova] upon demand of [Turner] may arrange for the
performance of [BOCA]’s obligation under the subcontract subject to the
provisions of paragraph 3 herein:

(3)  The balance of the
subcontract price, as defined below, shall be credited against the reasonable
cost of completing performance of the subcontract.  If completed by [Turner],
and the reasonable cost exceeds the balance of the subcontract price, [Nova]
shall pay to [Turner] such excess, but in no event shall the aggregate
liability of [Nova] exceed the amount of this bond. . . .

The bond also incorporated
the terms of the subcontract by reference:  “[BOCA] has by written agreement
dated 1/16/2004 entered into a subcontract with [Turner] . . . , which
subcontract is by reference made a part hereof. . . .”

Turner made several payments to BOCA without
objection under the subcontract.  However, when BOCA was to begin installing
the system, Turner sent a series of letters to BOCA regarding BOCA’s failure to
meet its performance deadlines.  None of these letters declared BOCA in
default, and Nova was not copied on any of these letters.  On November 9, 2004,
Turner invoked Article XI of the subcontract by sending BOCA written notice
giving it three days to cure its deficient performance.  Turner elected to move
forward under option (a) of this Article, which, as noted above, entitled
Turner “to perform and furnish through itself or through others any such labor
or materials for the Work and to deduct the cost thereof from any monies due or
to become due to [BOCA] under this Agreement[.]”  Turner did not notify Nova
that it considered BOCA to be in default at that time.

On December 15, 2004, Turner notified Nova that BOCA
had defaulted on the subcontract.  Specifically, Turner faxed a letter to Nova
which provided as follows:

The Principal, [BOCA], due to insufficient funds has not
been able to pay for labor and material necessary to complete this Project. 
BOCA has requested that we provide labor and material on their behalf to
complete the Project.  This letter, therefore, constitutes notice of default
by BOCA, Inc. per the terms of the bond.  We request that you contact us
immediately to review and resolve the non-payment issues for labor and material
on this Project.

(emphasis added).  Nova hired
a consultant, Forcon International Corporation (“Forcon”) to investigate BOCA’s
default.  Forcon corresponded with Turner to determine whether BOCA had
defaulted and the amount of Nova’s liability, if any, under the surety bond.  Turner
communicated with Forcon regarding the actions it took to complete the project,
including the need to completely re-do much of BOCA’s work that had failed
certain necessary tests.  Nova took no action, instead communicating with
Turner through Forcon that it was continuing to investigate the default. 
Forcon’s January 25, 2005 internal investigation report disclosed Turner’s
estimate of over $800,000 to complete the project and over $200,000 in liquidated
damages owed by Turner to the City as a result of project delays caused by
BOCA’s default.  

On January 21, 2005, Nova notified Turner that, until
BOCA was terminated from the project, Nova could not proceed to elect its
remedies under the bond; it requested that Turner fax a copy of the termination
letter as soon as possible.  In February and March of 2005, Turner sent letters
to Nova stating that BOCA’s default caused Turner to incur costs exceeding the
penal sum of the bond and demanding payment under the bond.  Nova did not
respond, other than to inform Turner that it was still investigating the
project.  Turner completed the project in July of 2005.  In August 2006, Forcon
concluded that the value of Turner’s claim was over $900,000, more than double
the amount of the penal sum of the performance bond.  On November 20, 2006,
Nova rejected Turner’s bond claim, informing Turner that “a condition precedent”
for making the bond claim was that BOCA “shall be and be declared to be in
default.”  Turner thereafter sued both Nova and BOCA.  Turner obtained an
interlocutory default judgment against BOCA in May 2008.

Nova and Turner filed competing motions for summary
judgment, as well as numerous replies and responses and a wealth of documents
in support of their respective positions.  Prior to the trial court’s ruling on
the summary-judgment motions, the parties stipulated to the following:

1.      Turner
did not send written notice of termination to BOCA.

2.      The
undisputed summary judgment evidence is that BOCA abandoned the project and
subcontract on December 14, 2004.  Nova does not dispute that BOCA abandoned
the project on December 14, 2004.

3.      Turner
contends that it gave timely notice to Nova.  Nova disputes that timely notice
was given.  However, Nova acknowledges that even if Turner had given timely
notice, damages to Turner under the bond, if due, would exceed $415,000.00.

4.      Nova
contends that prejudice to Nova is presumed due to Turner’s actions prior to
December 15, 2004, but Nova acknowledges that Nova cannot identify any persons
with personal knowledge who could testify that Nova was prejudiced or harmed by
Turner’s conduct.

On July 14, 2009, the trial
court granted Turner’s Motion for Partial Summary Judgment, as supplemented,
and found Nova liable to Turner for breach of the bond.[1]  

This partial summary judgment became final on July
31, 2009, when the trial court entered its final judgment.  As is relevant
here,[2]
the trial court ordered in its final judgment that Turner recover from Nova (1)
$415,000, representing the full penal sum of the performance bond; (2)
attorneys’ fees of $314,000 for services rendered through judgment; and (3)
pre-judgment interest on the attorney’s fees Turner had “paid . . . to its attorneys”
in the amount of $14,564.38.  This appeal timely ensued thereafter.  

ANALYSIS

A.        Standard of
Review and Applicable Law

We review a grant of summary judgment de novo.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). 
The party moving for traditional summary judgment bears the burden of showing that
no genuine issue of material fact exists and that it is entitled to judgment as
a matter of law.  Tex. R. Civ. P. 166a(c); see also Knott, 128 S.W.3d at
216.  When both sides have moved for summary judgment, and the trial court has
granted one motion and denied the other, we will review the summary judgment
arguments and evidence presented by both sides and determine all questions
raised therein.  See Tex. Mun. Power Agency v. Pub. Util. Comm’n of Tex.,
253 S.W.3d 184, 192 (Tex. 2007).  In such a situation, we will render the
judgment that the trial court should have rendered.  Id.

            The construction
of a surety agreement is a question of law.  Frost Nat’l Bank v. Burge,
29 S.W.3d 580, 591 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  The
liability of the surety is generally determined by the language of the bond.  Geters
v. Eagle Ins. Co., 834 S.W.2d 49, 50 (Tex. 1992).  Surety agreements are
strictly construed, and sureties are bound only by the precise terms of the
contract that they have secured.  See Vastine v. Bank of Dallas, 808
S.W.2d 463, 464 (Tex. 1991).  With these principles in mind, we turn to the
issues presented by Nova.

B.        Turner Was Not Required to
Terminate BOCA to Trigger Nova’s Performance Obligations

In its first issue, Nova asserts that “[b]oth the
performance bond and the subcontract required that Turner terminate BOCA from
the subcontract before Turner could recover on the bond.”  We disagree.  First,
the performance bond itself does not provide that Turner must “terminate”
BOCA.  Rather, as excerpted above, the bond states that if BOCA is in default
and Turner declares it in default under the subcontract, Nova’s obligations
under the bond are triggered.[3] 
The parties stipulated that BOCA abandoned the project on December 14, 2004. 
Further, Nova does not dispute that the day after BOCA abandoned the project,
Turner notified it that BOCA had defaulted on the subcontract.  Thus, based on
the plain language of the performance bond, Nova’s obligations under the bond
were triggered when Turner notified it that BOCA was in default.

Nova contends, however, that under the subcontract,
Turner could recover from BOCA or Nova any costs in excess of the unpaid
balance of the subcontract price only if Turner first terminated BOCA.  However,
Turner’s remedies in Article XI, excerpted above, were available to Turner in
addition to any other rights and remedies provided by the subcontract or
under the common law.  As noted supra, Article III of the subcontract requires
BOCA and its surety to compensate Turner for any “costs, expenses,
damages, and liability” caused by BOCA’s delay in completion of the project.  Clearly,
BOCA’s abandonment of the project delayed the project and caused Turner to
incur costs and expenses.

Further, the performance bond provides that Turner,
after reasonable notice to Nova may arrange for the performance of BOCA’s
obligations under the subcontract.  In such a case, the bond provides, “If
completed by [Turner], and the reasonable cost exceeds the balance of the
subcontract price, [Nova] shall pay to [Turner] such excess. . . .”
(emphasis added).  Thus, strictly construing the surety agreement and
considering the precise language of the subcontract, we conclude that the trial
court properly granted summary judgment to Turner on this basis.  See
Vastine, 808 S.W.2d at 464.  We overrule Nova’s first issue.  

C.        Turner Provided
Reasonable Notice of BOCA’s Default to Nova

            In its second
issue, Nova contends that summary judgment was improper because Turner failed
to give Nova notice of BOCA’s default sufficient to enable Nova to exercise its
performance options under the bond.  Specifically, Nova argues that, because
Turner had already made arrangements for the performance of some of BOCA’s
contractual obligations before it notified Nova that BOCA was in default, Turner
failed to comply with the plain terms of the performance bond, thereby rendering
the bond null and void.

Nova agrees that it is bound by both the bond and the
language of the underlying contract between BOCA and Turner.  See id.  Here,
the contract gave Turner two options upon BOCA’s default:  (1) to step in and
supplement BOCA’s work and deduct any expenses from the amount owed under the
contract; or (2) terminate the contract and take over the project.  Turner
initially chose to supplement BOCA’s work in an effort to keep the project
moving forward so that it could complete the entire contract with the City in a
timely fashion.  This option is expressly contemplated and permitted under the
plain language of the contract between BOCA and Turner.  Nova was presumably
aware of this subcontract option when it entered into the performance bond,
which explicitly incorporated the subcontract into its terms.  See, e.g.,
In re Lyon Fin’l Servs., Inc., 257 S.W.3d 228, 232 (Tex. 2008) (orig.
proceeding) (stating that a party who signs an agreement is presumed to know
its contents, as well as the contents of documents incorporated by reference).  We
disagree that Turner’s exercise of one of its options under the
subcontract—secured by and incorporated into the performance bond—rendered the
bond null and void.[4]


Further, the parties stipulated that BOCA abandoned the
project on December 14, 2004.  Turner notified Nova that BOCA had defaulted per
the terms of the bond the next day.  “After a declaration of default, the
relationship [between sureties, principals, and obligees] changes dramatically,
and the surety owes immediate duties to the obligee.”  L&A Contracting
Co. v. S. Concrete Servs.,Inc., 17 F.3d 106, 111 (5th Cir. 1994).  Rather
than notifying Turner that it planned to promptly remedy the default as
provided by the performance bond, Nova hired Forcon to investigate the default.


Nova complains in this issue that, because Turner
undertook completing the project itself, Nova was denied the opportunity to
mitigate damages, which rendered the bond unenforceable.  However, Nova’s
options under the bond were to promptly remedy the default or, upon demand
of Turner, to arrange for the performance of BOCA’s contractual
obligations.  Nova gave no indication to Turner that it intended to “promptly
remedy” BOCA’s default.  Further, instead of demanding that Nova arrange for
performance of BOCA’s obligations, Turner arranged for performance of BOCA’s
obligations itself, which the plain language of the bond permitted Turner to
do.[5]  

Under these circumstances, we conclude that Turner
provided Nova reasonable notice of BOCA’s default.  Accordingly, we overrule
Nova’s second issue. 

D.        Attorney’s Fees
and Pre-judgment Interest

In its third and final issue, Nova argues that (a)
Turner was not entitled to attorney’s fees because summary judgment was
improper and (b) the trial court erroneously awarded pre-judgment interest on attorney’s
fees paid by Turner before judgment.  We have determined that the trial court
properly granted summary judgment to Turner on its claims against Nova.  Thus,
we consider only whether the trial court erred in awarding pre-judgment
interest on the awarded attorney’s fees Turner paid prior to the entry of
judgment.[6]

There appears to be a split of authority among the
Courts of Appeals regarding the award of pre-judgment interest on attorney’s
fees paid before judgment.  See Carbona v. CH Med., Inc., 266 S.W.3d
675, 688 (Tex. App.—Dallas 2008, no pet.) (pre-judgment interest cannot be
recovered on attorney’s fees under any circumstances); Williams v. Colthurst,
253 S.W.3d 353, 362 (Tex. App.—Eastland 2008, no pet.) (allowing award of
pre-judgment interest on fees paid prior to judgment in a breach of lease
case); A.V.I., Inc. v. Heathington, 842 S.W.2d 712, 717 (Tex. App.—Amarillo
1992, writ denied) (permitting recovery of pre-judgment interest on fees
actually paid prior to judgment in DTPA case).  This court has previously observed
in an unpublished opinion that “if [the plaintiff] had paid her attorney prior
to the trial court’s judgment, she would be entitled to pre-judgment interest
on that amount.”  Life Ins. Co. of N. Am. v. Kilhafner, No.
14-96-00850-CV, 1998 WL 340288, at *5 (Tex. App.—Houston [14th Dist.] Jun. 18,
1998, no pet.) (not designated for publication).  More recently, we have stated
that an award of equitable pre-judgment interest on attorney’s fees is within
the trial court’s discretion.  See Kurtz v. Kurtz, No. 14-08-00351-CV,
2010 WL 1293769, at *11 (Tex. App.—Houston [14th Dist.] Apr. 16, 2010, no pet.)
(mem. op.).  In light of this authority, we cannot say the trial court abused
its discretion in awarding pre-judgment interest on attorney’s fees that Turner
had already paid prior to the trial court’s entry of judgment.  We therefore
overrule Nova’s third and final issue.

For the foregoing reasons, we affirm the trial
court’s judgment. 

 








                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges,
Justice Jamison, and Senior Justice Mirabal.*

 









[1]
In finding in favor of Turner, the trial court stated that it considered only
the following pleadings filed by Turner and Nova:

·        
Turner’s Motion for Partial Summary Judgment;

·        
Nova’s Cross-Motion for Summary Judgment and Response to Turner’s
Motion for Partial Summary Judgment;

·        
Turner’s Response to Nova’s Cross-Motion for Summary Judgment and
Turner’s Supplemental Motion for Partial Summary Judgment;

·        
Nova’s Reply in Support of Nova’s Cross-Motion for Summary
Judgment and Response to Turner’s Supplemental Motion for Partial Summary
Judgment;

·        
Turner’s Cross Reply to Nova’s Reply in Support of Nova’s
Cross-Motion for Summary Judgment and Turner’s Reply to Nova’s Response to
Turner’s Supplemental Motion for Partial Summary Judgment;

·        
Turner’s Supplemental Response to Nova’s Cross Motion for Summary
Judgment;

·        
Nova’s Reply to Turner’s Supplemental Response to Nova’s Cross
Motion for Summary Judgment;

·        
Nova’s Motion for Reconsideration;

·        
Turner’s Response to Nova’s Motion for Reconsideration;

·        
Nova’s Reply in Support of Motion for Reconsideration;

·        
Turner’s Cross-Reply to Nova’s Reply in support of Nova’s Motion
for Reconsideration; and

·        
The parties’ Stipulations[.]





[2]
The trial court entered a final default judgment against BOCA and awarded
Turner damages in its judgment, as well.  The trial court also ordered Nova to
pay Turner’s appellate attorneys’ fees if Nova unsuccessfully appealed. 
Finally, the trial court ordered pre-judgment interest on the amount of the
penal sum of the bond.





[3]
Nova agrees that the performance bond does not explicitly require termination
before its obligations under the bond were triggered.  However, it relies on
out-of-state authority for its proposition that we should imply such a
requirement into the bond at issue here.  See, e.g., L&A
Contracting Co. v. S. Concrete Servs., Inc., 17 F.3d 106, 111 (5th Cir.
1994) (determining, in a case from Mississippi, that a principal’s “declaration
of default sufficient to invoke the surety’s obligations under the bond must be
made in clear, direct, and unequivocal language”).  The L&A court
went on to state:  “The declaration must inform the surety that the principal
has committed a material breach or series of material breaches of the
subcontract, that the obligee regards the subcontract as terminated, and that
the surety must immediately commence performing under the terms of its bond.”  Id. 
Here, as noted above, Turner specifically notified Nova of BOCA’s default
“per the terms of the bond.”  Turner further requested that Nova immediately
contact Turner to resolve payment issues for labor and material on the
project.  We conclude that the facts of this case are significantly different
from the facts of L&A, in that the obligee in L&A never
provided notice to the surety that the principal was in “default.”  See id.
(explaining that none of the correspondence sent to the principal and surety
contained the word “default,” nor was an unequivocal declaration of default
contained in any of the correspondence).  Furthermore, Texas courts do not
imply terms into unambiguous contracts for which the parties have not
bargained.  See Wolf Hollow I, L.P. v. El Paso Mktg, L.P., —S.W.3d—, No.
14-09-00118-CV, 2010 WL 4262048, at *5 (Tex. App.—Houston [14th Dist.] Oct. 28,
2010, no pet. h.) (citing Tenneco, Inc. v. Enter. Prods. Co, 925 S.W.2d
640, 646 (Tex. 1996)).





[4]
Nova cites several out-of-state cases for the proposition that an obligee
materially breaches the terms of a performance bond by failing to give a surety
sufficient notice of the principal’s default to enable the surety to select its
performance options.  See L&A Contracting Co., 17 F.3d at 111; Elm
Haven Constr. L.P. v. Neri Constr. LLC, 376 F.3d 96, 101 (2d Cir. 2004); Hunt
Constr. Group Inc. v. Nat’l Wrecking Corp., 542 F. Supp. 2d 87, 95–96
(D.D.C. 2008) (mem. op.).  Not only are none of these cases controlling
precedent, but they are all easily distinguishable.  For example, in L&A
Contracting, the obligee never properly notified the surety that the
principal was in default under the terms of the performance bond.  L&A
Contracting Co., 17 F.3d at 111.  The court in Elm Haven relied on L&A
Contracting and another Second Circuit case in which the language of the
performance bond required that the obligee terminate the principal as a
condition precedent to the sureties’ obligations under the bond to determine
that termination of the principal was required.  Elm Haven, 376 F.3d at
100 (citing U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369
F.3d 34, 57 (2d Cir. 2004) (requiring termination of principal as condition
precedent to sureties’ obligations under bond) and L&A Contracting,
17 F.3d at 111).  In Hunt Construction, the principal failed to notify
the surety that the principal was in default until after it had
completed the work required under the subcontract.  See Hunt Constr. Group,
542 F. Supp. 2d at 89, 91–92.  





[5] Whether any of the costs
Turner incurred prior to notifying Nova that BOCA was in default under the
terms of the bond were recoverable from the bond funds or whether Turner’s
costs in completing BOCA’s contractual obligations were reasonable are not
issues before this court.  Moreover, the parties stipulated that, even if
Turner had given timely notice, damages to Turner under the bond, if due, would
exceed the penal sum of the bond.





[6]
We note that Nova erroneously relies on Texas Finance Code section 304.102 for
its proposition that pre-judgment interest accrues only on the amount of
“judgment.”  Tex. Fin. Code Ann. § 304.102 (West Supp. 2009).  This section of
the Finance Code explicitly applies only to cases involving wrongful death,
personal injury, or property damage.  Id.  Thus, it is inapplicable in
this breach of contract case.





* Senior Justice Margaret Garner Mirabal
sitting by assignment.